**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO INSURANCE POLICY NO. MKC00140, | : : : | CIVIL ACTION |
| | : | NO. 3:19-cv-17475-FLW-ZNQ |
| Plaintiffs, | : : | |
| | : | JURY TRIAL DEMANDED |
| v. | : : | |
| KMG INTERNATIONAL BV; RIDE RESOURCES, INC.; RIDES RESOURCES, INC.; RIDES 4U, INC.; RIDE LYNX, LLC; ROBERT TUCKER; XYZ CORPORATIONS 1-10 (fictitious designations), ABC COMPANIES 1-10, (fictitious designations), and JOHN DOES 1-10 (fictitious designations), | : : : : : : : : | |
| Defendants. | : : | |

**DEFENDANT, RIDE RESOURCES INC. D/B/A RIDES 4 U, INC.'S**
**BRIEF IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

**WHITE AND WILLIAMS LLP**
LibertyView
The Legal Center | One Riverfront Plaza
1037 Raymond Boulevard, Suite 230
Newark, NJ 07102-5425
Attorneys for Defendant,
Ride Resources, Inc. d/b/a Rides 4 U, Inc.
(improperly pled as Ride Resources, Inc.;
Rides Resources, Inc.; Rides 4U, Inc.)

On the brief:
Paul Piantino, Esquire
James D. Burger, Esquire

DATED: September 5, 2019                          *Electronically filed*

# TABLE OF CONTENTS

I.      Preliminary Statement...........................................................................................1

II.     Statement Of Facts .............................................................................................1

III.    Legal Argument ..................................................................................................5

        A.      Standard For Motion To Dismiss pursuant to Rule 12(b)(6)..................5

        B.      The Product Liability Act Subsumes Plaintiffs' Negligence, Gross Negligence, Breach of Implied Warranty and Misrepresentation claims. ...................................7

        C.      Moving Defendants Cannot Be Liable Under The Products Liability Act and the Should This Claim Should Be Dismissed as to Moving Defendants....................11

        D.      The Pleading is Insufficient to State a Claim for Punitive Damages....................15

IV.     Conclusion ......................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Bailey v. Wyeth, Inc.,
   424 N.J. Super. 278 (Law. Div. 2008) ...................................................................................10

Green v. Gen. Motors Corp.,
   310 N.J. Super. 507 (App. Div. 1998) .....................................................................................8

In re Lead Paint,
   191 N.J. 405 (2007) ..............................................................................................7, 8, 9, 10

McDarby v. Merck & Co., Inc.,
   401 N.J. Super. 10 (App. Div. 2008) ...................................................................................8, 10

McWilliams v. Yamaha Motor Corp. USA,
   780 F.Supp. 251 (D.N.J. 1991) ..............................................................................................8

Port Auth. of N.Y. & N.J. v. Arcadian Corp.,
   189 F.3d 305 (3d Cir. 1999).....................................................................................................8

Ransom v. Marrazzo,
   848 F.2d 398 (3d Cir. 1988).....................................................................................................5

Reiff v. Convergent Techs.,
   957 F.Supp. 573 (D.N.J. 1997) ..............................................................................................8

Rowe v. Hoffman-La Roche, Inc.,
   189 N.J. 615 ............................................................................................................................7

Shackil v. Lederle Lab., Div. of Am. Cyanamid Co.,
   116 N.J. 155 (1989) ................................................................................................................7

Sinclair v. Merck & Co., Inc.,
   195 N.J. 51 (2008) ...................................................................................................6, 7, 8, 10

Walus v. Pfizer,
   812 F.Supp. 41 (D.N.J. 1993) .........................................................................................8, 9, 10

STATUTES

New Jersey Product Liability Act ..................................................................................6,7,8,9,11,17

New Jersey's Consumer Fraud Act.......................................................................................10

23343147v.1

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................ 5

Federal Rule of Civil Procedure 56 ................................................................................ 5

I.    **Preliminary Statement**

This is a products liability matter arising from an amusement park ride that failed in Ohio while in operation on July 26, 2017.  Four (4) Ohio residents were injured.  The subrogation Plaintiff claims its insured, the owner and operators of the ride, was damaged in that it was caused to pay a monetary settlement at mediation.

The New Jersey Products Liability Act ("the Act") is the exclusive remedy for injuries caused by a product.  Allegations of negligence, fraud, breach of contract, contribution and indemnification are subsumed by the Act and should be dismissed.

Second, the products liability claim involves a product that Moving Defendants have no connection to whatsoever.  Moving Defendants are not "sellers" or "manufacturers" under the Act, and therefore the products liability claim should be dismissed against Moving Defendants.

Finally, the claim for punitive damage against Moving Defendants should be dismissed because punitive damages are not available in subrogation matters.  A subrogee's rights rise no higher than its subrogor. Here, Plaintiffs allegedly paid out a sum certain at mediation, so their recovery can be no more than the amount paid.  Moreover, Moving Defendants have no connection whatsoever to the product, so the punitive damage is without basis as regards Moving Defendants.

II.    **Statement Of Facts**

1.    This subrogation matter is brought on behalf of the insurance company, Certain Underwriters at Lloyd's, London, pursuant to a policy issued to Vivona Family Entertainment Company/Amusements of America, Inc. ("Amusements of America").  See Complaint attached as Ex. "A".

2.      Amusements of America has owned a certain amusement park ride since 1999. Id., at ¶43.

3.      The complaint fails to allege who sold Amusements of America the ride that it has owned since 1999.

4.      It is alleged that Defendant KMG was responsible for manufacturing the amusement park ride ("the ride"). Id. at ¶4.

5.      Amusements of America operated the ride at an Ohio State Fair on July 26, 2017. Id. at ¶¶3, 5.

6.      Moving Defendants, Ride Resources, Inc. d/b/a Rides 4 U, Inc. (collectively "Ride Resources"), improperly pled as Ride Resources, Inc.; Rides Resources, Inc.; Rides 4U, Inc.,[1] is alleged to be a "sales agent" of KMG. Id. at ¶23.

7.      The complaint does not allege that Moving Defendants sold the product at issue in this case.

8.      The complaint does not allege that Moving Defendants manufactured the ride at issue in this case.

9.      The complaint alleges that KMG had knowledge of a design defect in the ride and failed to warn Amusements of America. Id. at ¶¶34-52 (section titled "KMG's Knowledge of the Defect in the Fireball").

10.     The complaint does not allege any facts to support the claim that Moving Defendants had knowledge of any defect in the ride at issue in this case. Id.

11.     In fact, Ride Resources, Inc. has never had any connection or interaction with the ride whatsoever. See Affidavits of KMG and Ride Resources, attached as Exs. "B" and "C".[2]

_____

[1] There is no entity associated with Ride Resources, Inc. d/b/a Rides 4 U, Inc. that is named "Rides Resources, Inc."

12.     Ride Resources had no agency relationship with KMG at any time relevant to this case, and did not design, manufacture, maintain, sell, distribute, or have any connection or duty with respect to the ride. Id.

13.     These facts are established by an affidavit from the manufacturer of the ride KMG International BV ("KMG") as well as an affidavit from Ride Resources. Id.

14.     The ride was manufactured by KMG International BV ("KMG") in 1999. See KMG affidavit, attached as Ex. "B".

15.     Ride Resources never had any involvement in marketing, distribution or sale of the ride. See affidavits of KMG and Ride Resources attached as Exs. "B" and "C".

16.     Ride Resources also never had any involvement in the maintenance, lease, assembly, export, import, inspection, construction, installation, transport, testing, repair, maintenance, production, creation, making, packaging, labeling, providing warnings or instruction for the ride or any component part of the ride, or any other involvement with the ride or any component part of the ride whatsoever. Id.

17.     Ride Resources never had possession, control or ownership of the ride or any component part of the ride. Id.

18.     Ride Resources, Inc. d/b/a Rides 4 U, Inc. never held itself out as the manufacturer of the ride. Id.

19.     Eight or nine *years* after the ride was sold, in 2008, Ride Resources and KMG started a business relationship whereby Ride Resources would attempt to connect buyers of amusement park rides with KMG in exchange for commission. Id.

---

[2] Moving Defendants inclusion of these affidavits is for purpose of dismissal of the products liability claim (Count One of the Complaint). Moving Defendants acknowledge that, pursuant to Rule 12(d), the motion to dismiss this claim may be treated as one for summary judgment under Rule 56.

20.     This relationship never had anything to do with or concerned the ride.  Id.

21.     The relationship formed in 2008 merely placed Ride Resources in a position to

obtain a financial benefit, i.e., finder's fee, if it could connect KMG and a buyer for rides.  Id.

22.     Both the timing and nature of the relationship between Ride Resources and KMG

prove that Ride Resources had no involvement with the ride that is at issue in this case.  Id.

23.     The complaint consists of seven counts, with Count One sounding in product

liability.  The remaining counts of the complaint are fraud (Count Two); negligence (Count

Three); breach of contract (Count Four); contribution (Count Five); indemnification (Count Six);

and punitive damages (Count Seven).  See complaint attached as Ex. "A".

24.     The complaint alleges two other related actions are currently pending.  See

complaint attached as Ex. "A", at ¶¶7, 9.

25.     The complaint described in ¶7 of the complaint has been removed to the United

States District Court of the District of New Jersey based on diversity jurisdiction, although a

motion to remand is pending.  Therein, Moving Defendants oppose remand on the basis that they

were fraudulently joined in an attempt to lay jurisdiction in the state of New Jersey as the

accident occurred in Ohio, and all Plaintiffs live in Ohio.  It appears the current Plaintiffs have

merely copied the defendants listed in that lawsuit and listed them in the present case as there is

no factual basis for a claim against Moving Defendants, as discussed herein.

26.     The complaint also alleges that its insured, Amusements of America, filed its own

lawsuit in the Superior Court of New Jersey, Ocean County, for damages related to the ride at

issue in this case.  Id. at ¶9.

27.     Notably, Moving Defendants were not joined by Amusements of America to that

litigation.  See Amusements of America Ocean County complaint, attached as Ex. "D".

28.     The decision by Amusements of America, the owner and operator of the ride at issue, to not even attempt to sue Moving Defendants is clearly indicative of the lack of any involvement whatsoever that Moving Defendants have to the ride at issue in this case.  Id.; see also affidavits attached as Exs. "B" and "C".

**III.**     **Legal Argument**

**A.**     **Standard For Motion To Dismiss pursuant to Rule 12(b)(6)**

A Rule 12(b)(6) motion to dismiss should be granted when it is certain that no relief could be afforded under any set of facts that could be proved consistent with the allegations. Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988).

In determining a motion to dismiss, a court must take three steps.  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1947 (2010)).  "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'"  Id. (quoting Iqbal, 129 S.Ct. at 1950). "Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' " Id. (quoting Iqbal, 129 S.Ct. at 1950).

In addition, as two affidavits are submitted in support of this motion as it pertains to the products liability claim, the Court may apply the standard of Rule 56, which applies to motions for summary judgment.  See Fed. R. Civ. P. 12(d). Rule 56 permits the entry of summary judgment against a party who fails to offer admissible evidence sufficient to establish the existence of every element essential to that party's case on which that party bears the burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).  Although a defendant bears the

initial responsibility of asserting the basis for its motion, the defendant is not required to negate the plaintiff's claim.  Rather, the defendant must only point out that there is an absence of evidence to support the plaintiff's case or, alternatively, offer affirmative evidence which demonstrates that the plaintiff cannot prove his or her case.  Lawrence v. Nat'l Westminster Bank, N.J., 98 F.3d 61, 69 (3d Cir. 1996).  After the defendant has met this initial burden, the plaintiff must present competent evidence designating "specific facts showing that there is a genuine issue for trial."  Celotex, 477 U.S. at 324 (citation omitted).  The mere existence of an alleged factual dispute, if not material, will not defeat an otherwise properly supported motion for summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  To survive a summary judgment motion, therefore, the non-moving party must come forward with specific admissible and credible evidence supporting each element essential to that party's case; mere conclusory allegations or denials are not enough.  Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).

The present motion seeks to (1) dismiss the products liability claim as the New Jersey Products Liability Act does not apply to Moving Defendants because they are not "sellers" or "manufacturers" of the product; (2) dismiss the claim for punitive damages as not permitted in subrogation; and (3) dismiss counts of the complaint that allege causes of action other than a claim under the Product Liability Act because this lawsuit arises from allegations of injury caused by a defective product.  In New Jersey "the Legislature expressly provided in the PLA that claims for "harm caused by a product" are governed nearly exclusively by the PLA "irrespective of the theory underlying the claim."  Sinclair v. Merck & Co., Inc., 195 N.J. 51, 65 (2008).

**B.     The Product Liability Act Subsumes Plaintiffs' Negligence, Fraud, Breach of Contract, and Contribution/Indemnity Claims**

The New Jersey Product Liability Act subsumes claims of negligence, breach of contract, and fraud and well-established New Jersey law requires dismissal of these claims.  See, e.g., Sinclair v. Merck & Co., Inc., 195 N.J. 51, 65-66 (2008).

The PLA was enacted in 1987 to "re-balance the law 'in favor of manufacturers.'"  Rowe v. Hoffman-La Roche, Inc., 189 N.J. 615, 623(2007) (quoting Dreier, Keefe, & Katz, New Jersey Products Liability & Toxic Torts Law, § 15:4 (Gann 2007)).  The New Jersey Supreme Court acknowledged that the PLA reflects the Legislature's "intent to limit the expansion of products-liability law by creating absolute defenses and rebuttable presumptions of non-liability."  Shackil v. Lederle Lab., Div. of Am. Cyanamid Co., 116 N.J. 155, 187 (1989).  The Court explained that "'[w]ith passage of the Product Liability Act, ... there came to be one unified, statutorily defined theory of recovery for harm caused by a product, and that theory is, for the most part, identical to strict liability.' "  In re Lead Paint, 191 N.J. 405, 436 (2007) (quoting Dreier, Keefe, & Katz, New Jersey Products Liability & Toxic Torts Law, § 1:2–1 (Gann 2007)).

A product liability action is defined by the Act as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty."  N.J.S.A. 2A:58C–1b(3).  The term "harm" is defined as: "(a) physical damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph."  N.J.S.A. 2A:58C-1(b)(2).  There are only three exceptions to the exclusive remedy provision of the Act: actions for harm caused by the defective product to itself only, actions based on breach of express warranty, and actions

- 7 -

based on environmental torts.  N.J.S.A. 2A:58C-l(b)(2)-(4). None of the three exceptions applies in this case.

The District Court of New Jersey and New Jersey Supreme Court have directly and repeatedly held that claims of negligence are subsumed by the PLA where an injury is caused by a product, and these claims should be dismissed from product liability actions.  See, e.g., Port Auth. of N.Y. & N.J. v. Arcadian Corp., 189 F.3d 305, 313 (3d Cir. 1999); In re Lead Paint, 191 N.J. 405, 437 (2007).  This rule holds true where the pleadings make clear that the injury arises from an allegedly defective product, regardless of the characterization of the claims in the complaint.  Sinclair v. Merck & Co., Inc., 195 N.J. 51, 65 (2008).

This rule applies to claims of negligence, fraud, misrepresentation, and nearly all other claims.  See, e.g., Port Auth. of N.Y. & N.J. v. Arcadian Corp., 189 F.3d 305, 313 (3d Cir. 1999) (dismissing negligence claim, stating that "under New Jersey law negligence is no longer viable as a separate claim for harm caused by a product"); Reiff v. Convergent Techs., 957 F.Supp. 573, 583 (D.N.J. 1997) (dismissing negligence and breach of warranty claims); Walus v. Pfizer, 812 F.Supp. 41, 42 (D.N.J. 1993) (granting summary judgment for misrepresentation and negligence claims because those claims are subsumed by the PLA); McWilliams v. Yamaha Motor Corp. USA, 780 F.Supp. 251, 262 (D.N.J. 1991) (dismissing claims of negligence and breach of implied warranty), aff'd. in part, rev'd. in part on other grounds, 987 F.2d 200 (3d Cir. 1993); McDarby v. Merck & Co., Inc., 401 N.J. Super. 10, 96 (App. Div. 2008) (reversing verdict entered on claims of misrepresentation and negligence because those claims are subsumed by PLA and should have been dismissed); Green v. Gen. Motors Corp., 310 N.J. Super. 507, 517, (App. Div. 1998) (stating that "causes of action for negligence, strict liability and implied warranty have been consolidated into a single product liability cause of action" under the PLA).

In Lead Paint, twenty-six municipalities and counties sought to recover from manufacturers and distributors of lead paints for costs of detecting and removing lead paint from homes and buildings, providing medical care to residents affected with lead poisoning, and developing programs to educate residents about the dangers of lead paint.  Id. at 408–09.  Although the complaints initially sought recovery through a wide variety of legal theories, the Court was called upon to consider only whether the plaintiffs had stated a cognizable claim based on the tort of public nuisance.  Id. at 409.  The Supreme Court held that the Product Liability Act encompasses "virtually all possible causes of action relating to harms caused by consumer and other products."  Id. at 436–37.

The essence of the claims asserted by the plaintiffs in Lead Paint was that defendants failed to warn of the dangers of lead paint.  Id. at 437.  The Court noted that the harms plaintiffs were seeking to vindicate are addressed in the context of a product liability claim:

> Were there any doubt about the essential nature of the claims asserted by plaintiffs, a careful reading would demonstrate that they sound in products liability causes of action.  The central focus of plaintiffs' complaints is that defendants were aware of dangers associated with lead —and by extension, with the dangers of including it in paint intended to be used in homes and businesses— and failed to warn of those dangers**.  This classic articulation of tort law duties, that is, to warn of or to make safe, is squarely within the theories included in the PLA.**  In light of the clear intention of our Legislature to include all such claims within the scope of the PLA, we find no ground on which to conclude that the claims being raised by plaintiffs, regarding an ordinary household product used by consumers, were excluded from the scope of that Act.

Id. (emphases added and internal citations omitted).

In Walus v. Pfizer, plaintiff asserted theories of negligence, strict liability, failure to warn, fraud, misrepresentation, and negligent and intentional infliction of emotional distress.  812 F.Supp. 41, 42 (D.N.J. 1993).  After analyzing the PLA and cases interpreting it, the court

- 9 -

granted summary judgment to the defendants because the PLA subsumes all of these causes of action. Id. at 45. "New Jersey treats all product liability actions the same, regardless of the theory asserted. Plaintiffs cannot ... recast [ ] their product liability claims as fraud claims." Id. (citations omitted).

Similarly, In Brand Farms v. Novartis Crop Prot., Inc., the District Court granted a defendant's motion to dismiss claims for misrepresentation/fraud brought under New Jersey's Consumer Fraud Act because those claims are subsumed by the PLA. 890 F.Supp. 2d 534, 535 (D.N.J. 2012). The pleadings alleged damages were caused by certain misrepresentations in addition to a defective product. Id. at 547. However, the gravamen of the action was that damages were caused by the allegedly defective product, and therefore the case was within the scope of the PLA, which subsumes other tort claims, including claims of misrepresentation and fraud. Id.

New Jersey's Appellate Division reversed a verdict based on misrepresentation, fraud, and "unconscionable commercial practice" in support of a Consumer Fraud Act claim because all of these claims are subsumed by the PLA. McDarby v. Merck & Co., Inc., 401 N.J. Super. 10, 96 (App. Div. 2008). In vacating the award, the Court observed that "[a]s in Lead Paint, plaintiffs' own arguments make it clear that what they are asserting is, at its core, that [defendant] failed to warn of dangers from a product of which it had knowledge …". Id. at 97l; see also Bailey v. Wyeth, Inc., 424 N.J. Super. 278, 333 (Law. Div. 2008) "Plaintiffs' fraudulent misrepresentation and negligent misrepresentation claims are also subsumed by the PLA for the same reasons cited above" (referring to its discussion of Sinclair, Lead Paint, and McDarby) aff'd sub nom. DeBoard v. Wyeth, Inc., 422 N.J. Super. 360 (App. Div. 2011).

- 10 -

Under the express terms of the Product Liability Act, and under the well-established application of the Act, Plaintiffs' claims for negligence, breach of contract, fraud and contribution/indemnity are subsumed and must be dismissed.  Whether cast as claims of negligence, fraud, failure to warn, misrepresentation, or otherwise, these tort claims are subsumed under the PLA.  Here, the complaint leaves no doubt that the "heart of the claim" is that Plaintiff claims injury by an allegedly defective product.  Indeed, the complaint specifically alleges that injury was caused as a direct result of the failure of a product.  See Exhibit "A" at ¶ 5.  Further, the complaint asserts a products liability claim against all defendants and cites the Products Liability Act at Count One.  As such, and as a matter of law, Plaintiffs' claims for negligence, breach of contract, fraud and contribution/indemnity are subsumed by New Jersey's Product Liability Act and should be dismissed.

### C.     Moving Defendants Cannot Be Liable Under The Products Liability Act and the Should This Claim Should Be Dismissed as to Moving Defendants

Ride Resources Inc. d/b/a Rides 4 U, Inc. ("Ride Resources"), improperly pled as Ride Resources, Inc.; Rides Resources, Inc.; Rides 4U, Inc., is neither a "manufacturer" nor "seller" of the ride, and therefore it cannot be liable under the New Jersey Products Liability Act.  There is no reasonable basis in fact that supports any allegation against Ride Resources and the claim in this case is frivolous.

In New Jersey "the Legislature expressly provided in the PLA that claims for 'harm caused by a product' are governed nearly exclusively by the PLA 'irrespective of the theory underlying the claim.'" Sinclair v. Merck & Co., Inc., 195 N.J. 51, 65 (2008). Liability cannot exist under the PLA unless a party is a "manufacturer" or "seller". See N.J.S.A. § 2A:58C-2. The term "manufacturer" is defined by the PLA as follows:

"Manufacturer" means (1) any person who designs, formulates, produces, creates, makes, packages, labels or constructs any product or component of a product; (2) a product seller with respect to a given product to the extent the product seller designs, formulates, produces, creates, makes, packages, labels or constructs the product before its sale; (3) any product seller not described in paragraph (2) which holds itself out as a manufacturer to the user of the product; or (4) a United States domestic sales subsidiary of a foreign manufacturer if the foreign manufacturer has a controlling interest in the domestic sales subsidiary.

<u>N.J.S.A.</u> § 2A:58C-8.

The term "seller" is defined as:

"Product seller" means any person who, in the course of a business conducted for that purpose: sells; distributes; leases; installs; prepares or assembles a manufacturer's product according to the manufacturer's plan, intention, design, specifications or formulations; blends; packages; labels; markets; repairs; maintains or otherwise is involved in placing a product in the line of commerce. The term "product seller" does not include:
(1) A seller of real property; or
(2) A provider of professional services in any case in which the sale or use of a product is incidental to the transaction and the essence of the transaction is the furnishing of judgment, skill or services; or
(3) Any person who acts in *only a financial* capacity with respect to the sale of a product.

<u>Id.</u>(emphasis added).[3]

---

[3] Ride Resources is also not a "manufacturer" or "supplier" under Ohio law, which are the two categories to which Ohio Products liability law applies. Ohio law products liability law at ORC Ann. 2307.71 provides the following:

**"Product liability claim"** means a claim or cause of action … that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following:

(a) The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;

(b) Any warning or instruction, or lack of warning or instruction, associated with that product;

(c) Any failure of that product to conform to any relevant representation or warranty.

"Product liability claim" also includes any public nuisance claim or cause of action at common law in which it is alleged that the design, manufacture, supply, marketing, distribution, promotion, advertising, labeling, or sale of a product unreasonably interferes with a right common to the general public.

- 12 -

Ride Resources has never had any connection or interaction with the ride whatsoever. See Affidavits of KMG and Ride Resources, attached as Exs. "B" and "C". These facts are established by an affidavit from the manufacturer of the ride KMG International BV ("KMG"), and an affidavit from Ride Resources. Id.

Ride Resources had no agency relationship with KMG at any time relevant to this case, and did not design, manufacture, maintain, sell, distribute, or have any connection or duty with respect to the ride. Id. Ride Resources never had any involvement in marketing, distribution or sale of the ride. Id. Ride Resources also never had any involvement in the maintenance, lease, assembly, export, import, inspection, construction, installation, transport, testing, repair, maintenance, production, creation, making, packaging, labeling, providing warnings or instruction for the ride or any component part of the ride, or any other involvement with the ride or any component part of the ride whatsoever. Id. Ride Resources never had possession, control or ownership of the ride or any component part of the ride. Id. Ride Resources, Inc. d/b/a Rides 4 U, Inc. never held itself out as the manufacturer of the ride. Id.

---

"**Manufacturer**" means a person engaged in a business to design, formulate, produce, create, make, construct, assemble, or rebuild a product or a component of a product.

"**Supplier**" means … either of the following:

(i) A person that, in the course of a business conducted for the purpose, sells, distributes, leases, prepares, blends, packages, labels, or otherwise participates in the placing of a product in the stream of commerce;

(ii) A person that, in the course of a business conducted for the purpose, installs, repairs, or maintains any aspect of a product that allegedly causes harm.

(b) "Supplier" does not include any of the following:

(i) A manufacturer;

(ii) A seller of real property;

(iii) A provider of professional services who, incidental to a professional transaction the essence of which is the furnishing of judgment, skill, or services, sells or uses a product;

(iv) Any person who acts only in a financial capacity with respect to the sale of a product, or who leases a product under a lease arrangement in which the selection, possession, maintenance, and operation of the product are controlled by a person other than the lessor.

The affidavits make clear that a products liability claim against Ride Resources for the ride at issue is frivolous. The relationship between Ride Resources and KMG was formed 8-9 *years* after the ride was sold and does not involve anything pertaining to the ride. Ride Resources' later-created relationship is only financial in making a connection between the manufacturer and a potential buyer, which nevertheless is an exception to liability. See N.J.S.A. §2A:58C-8 ("product seller" (3)). However, Ride Resources had no such involvement with the ride at issue in this case. Id. Ride Resources could not have had any such involvement as it only began attempting to connect KMG to buyers 8-9 years after the ride was sold. See Exh. "B" and "C". Ride Resources has never had any interaction with the ride at issue in this case. Id.

If Ride Resources truly had potential liability in this matter, Plaintiff's subrogor, Amusements of America would have named Ride Resources as a defendant in a complaint it filed regarding this accident on July 26, 2019. See Complaint, attached as Ex. "D". At minimum, Plaintiff's subrogor, Amusements of America would have alleged that Moving Defendant was its agent, or had some connection to the ride. However, there is no such allegation. Id. The present complaint mentions the Amusements of America's Ocean County lawsuit, but fails to mention that Ride Resources is not named as a defendant and there are no allegations against Moving Defendants by the owner and operator of the ride in that case.

There is no factual basis or colorable claim against Ride Resources related to the ride at issue in this case. It is respectfully submitted that the affidavits attached as exhibits "B" and "C" establish that the products liability claim against Ride Resources should be dismissed. Ride Resources has no connection to the manufacture, sale, or service of the ride, and had never had any interaction with the ride. Id. Ride Resources is not a "manufacturer" or "seller" under the PLA and, and such, the products liability claim against Ride Resources should be dismissed.

- 14 -

### D.     Punitive Damages are Not Permitted in a Subrogation Matter so the Claim Should be Dismissed

The subrogee's rights arise no higher than those of the subrogor. <u>Mayfair Fabrics v. Henley</u>, 101 N.J. Super. 363, 368 (Law Div.1968). The general rule in this country is that a subrogee is entitled to indemnity only to the extent of the money actually paid to discharge the obligation. 73 Am.Jur.2d, Subrogation, § 114 (1974); <u>Memphis & L.R.R. Co. v. Dow</u>, 120 U.S. 287 (1886). Accordingly, New Jersey does not permit a subrogee, such as Plaintiffs here, to pursue a punitive damage claim. <u>See</u> <u>Colonial Penn Ins. Co. v. Ford</u>, 172 N.J. Super. 242, 244 (Ch. Div. 1979).

Other courts have also specifically ruled that punitive damages are not available to subrogees. <u>See</u>, <u>e.g.</u>, <u>Prudential Prop. & Cas. Co. v. Dow Chevrolet-Olds, Inc.</u>, 10 S.W.3d 97, 101 (Tex. Ct. App. 1999) (subrogee not entitled to receive punitive damages); <u>Utica Mut. Ins. Co.</u>, 778 F. Supp. at 594 ("Sound policy considerations, as well as the weight of authority, support the bar to punitive damage recovery in subrogation actions."); <u>Colo. Farm Bureau Mut. Ins. Co.</u>, 649 F. Supp. at 52 (denying award of punitive damages to plaintiff based on plaintiff's subrogee status); <u>Emp'rs Ins. Of Wausau v. Dunaway</u>, 626 F. Supp. 1144, 1146 (S.D. Miss. 1986) (subrogee cannot recover punitive damages); <u>Md. Cas. Co. v. Brown</u>, 321 F. Supp. 309, 312 (N.D. Ga. 1971) (plaintiff subrogee limited to indemnification and may not sue for punitive damages).

Here, Plaintiffs claim they paid out a sum certain at mediation on behalf of their insured. Plaintiffs' recovery is thereby capped at the sum certain amount it claims to have paid out at mediation.  The Plaintiff insurance company is not entitled to punitive damages in this matter, and the punitive damage claim should be dismissed.

### E.     The Pleading is Insufficient to State a Claim for Punitive Damages.

Plaintiffs also do not allege facts sufficient to support their request for punitive damages against Ride Resources.  The gravamen of the punitive damages claim is that parties knew the ride was defective but concealed this knowledge from Amusements of America.  See Ex. "A" at Count Seven.  However, there are no facts pled as to Ride Resources knowledge.  See Ex. "A" at ¶¶ 34-52 (titled "*KMG's* knowledge of the Defect in the Fireball").  The claim against Ride Resources rests on either mere conclusory language, or by attempting to "lump" all defendants together for purposes of asserting an overly broad claim.

While well-pleaded allegations of fact are entitled to an assumption of truth when considering a motion to dismiss, "the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir.2010) (citing Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2010)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Bellezza v. Flaghouse, Inc., 2005 WL 1076263 *2 (D.N.J. 2005)(quoting Fernandez-Montes v. Allied Pilots Ass'n, 987 F.2d 278, 284 (5th Cir.1993)).

In Tucker v. Bernzomatic, a product liability action, the district court was asked to consider whether plaintiff's punitive damage claim should be dismissed at the pleading stage. 2010 WL 1838704 *2, 2010 U.S. Dist. LEXIS 43771 (E.D. Pa. May 4, 2010)(attached as Exhibit "B")  There, as here, plaintiff alleged "[d]efendants knew that their product was unsafe and that

its unsafe condition could and would result in serious injury." Id. Defendants argued that this allegation is a conclusory allegation that, pursuant to Iqbal, need not be credited. Id.[4]

In deciding the issue, the court considered several cases and distinguished those where the pleadings merely alleged prior knowledge of a defective product from those that also alleged *how* the defendant knew of the defect. Id. at *4 (citing Bunner v. Koch, 2009 WL 798550 * 16 (D.Colo. Jan.30, 2009) (holding that without supporting factual information like "who allegedly complained in the past, how [d]efendants responded to those complaints, or what investigations were undertaken" the plaintiff's allegation that defendants had actual knowledge was merely conclusory.) The court held that, "[m]ore is required than an unadorned assertion that defendants 'knew' the [product] was unsafe." Id. at 4. As the complaint at issue made only a conclusory allegation of prior knowledge, but offered no facts to support the claim, the claim for punitive damage was dismissed under the Iqbal standard. Id.

Here, Plaintiffs Complaint describes KMG's alleged prior knowledge of an alleged defect, but not that Ride Resources had any such prior knowledge. See Ex. "A" at ¶¶ 34-52. In fact, the affidavits submitted as Exhibits "B" and "C" establish that Ride Resources had no involvement with the product whatsoever.

While the allegation of prior knowledge of a product defect may be addressed in discovery, there are, at present, no *facts* pled to support this allegation against Ride Resources. In the event Plaintiffs have facts to support these allegations, those must be pled to support a punitive claim. However, if Plaintiffs cannot support a "prior knowledge" allegation with any facts, then the claim is premised on nothing more than conclusory allegations and the punitive

---

[4] In fact, the court noted neither party cited any cases with respect to this argument, but found this "understandable in light of the dearth of case law discussing what a plaintiff must allege with respect to the defendant's knowledge in order to survive a motion to dismiss". Id. at *2. It therefore submitted that citation to this Eastern District of Pennsylvania case is relevant and instructive in this situation.

23343147v.1

damage claim should be dismissed.  As noted above, the mere allegation that Ride Resources possessed some prior knowledge, without factual support, is a conclusory allegation insufficient to withstand a motion to dismiss a claim for punitive damages.

It is therefore respectfully submitted that the claim for punitive damage be dismissed, without prejudice.

## IV.    **Conclusion**

This is a product liability matter because the underlying injuries were caused by failure of a product.  Allegations of negligence, fraud, breach of contract, and contribution/indemnity are therefore subsumed by New Jersey's Product Liability Act, and should be dismissed.  In addition, Moving Defendants have no connection to the product at issue and the products liability claim should also be dismissed against these moving parties.  Finally, the punitive damage claim should be dismissed because it is not permitted by law or supported by sufficient allegations of fact.

WHITE AND WILLIAMS LLP

BY:   /s/ Paul Piantino
Paul Piantino III, Esquire
piantinop@whiteandwilliams.com
James D. Burger, Esquire
burgerj@whiteandwilliams.com
The Legal Center | One Riverfront Plaza
1037 Raymond Boulevard, Suite 230
Newark, NJ 07102-5425
201.368.7200
Attorneys for Defendant
Ride Resources, Inc. d/b/a Rides 4 U, Inc.
(improperly pled as Ride Resources, Inc.;
Dated:  September 5, 2019            Rides Resources, Inc.; Rides 4U, Inc.)

- 18 -